Filed 10/26/22  In re L.S. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re L.S. et al., Persons Coming Under the Juvenile Court Law. | B319078 (Los Angeles County Super. Ct. No. 19CCJP02139A–B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> R.D., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tamara Hall, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy Assistant County Counsel, for Plaintiff and Respondent.

_____

## I. INTRODUCTION

R.D. (mother) appeals from an order terminating her parental rights over her children, older child (born in 2008) and younger child (born in 2009). Mother seeks a reversal and remand for compliance with the inquiry and notice requirements of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California statutes (Welf. & Inst. Code, § 224 et seq.).[1] We affirm.

## II. BACKGROUND[2]

La.S. is older child's presumed father and F.H. is younger child's alleged father. Mother has another child, L.K. (born in

---

[1] Further statutory references are to the Welfare and Institutions Code.

[2] Because the sole issue on appeal concerns the juvenile court's and the Los Angeles County Department of Children and Family Services's (the Department) compliance with ICWA and related California law, we limit our recitation of facts to those relevant to that compliance issue, except as is necessary for context.

2002), who resided in Atlanta, Georgia with her father, whose whereabouts were unknown.

On April 4, 2019, the Department filed a dependency petition for the children. At the detention hearing on April 5, 2019, mother filed a Parental Notification of Indian Status form (ICWA-020), which indicated that she may have Cherokee ancestry through maternal grandmother and Cheyenne ancestry through maternal grandfather.

On May 23, 2019, the Department interviewed maternal grandmother about mother's claim of Indian ancestry. The Department included the information it obtained from her in the ICWA-030 notices that it sent to the Secretary of the Interior, the Bureau of Indian Affairs, and the three Cherokee and two Cheyenne tribes in the Federal Register. Those notices included information about the names, birthdate, places of birth, dates and places of death, and tribal identifications for maternal grandmother, maternal grandfather, two maternal great-grandmothers, and two maternal great-grandfathers.

On May 24, 2019, older child's presumed father appeared at the adjudication hearing and filed an ICWA-020 indicating that he was "not sure" whether he had Indian ancestry on paternal grandmother's side. The Department subsequently contacted older child's paternal grandmother, who reported having no knowledge of any Native American ancestry and no knowledge of anyone who could provide further information. The Department then sent additional notices to the Secretary of the Interior, the Bureau of Indian Affairs, and the three Cherokee and two Cheyenne tribes in the Federal Register.

Younger child's alleged father's whereabouts were unknown and the Department was unable to contact him.

3

On July 19, 2019, the juvenile court declared the children dependents of the court under section 300, subdivisions (a) and (b)(1), and removed them from parental custody.

Mother appealed.  (*In re L.S.* (Mar. 10, 2020, B299673) [nonpub. order].)  Her sole contention in that appeal was that the Department had failed to notice the Cheyenne River Sioux tribe. The Cheyenne River Sioux was a Sioux, not a Cheyenne, tribe. While the appeal was pending, the juvenile court ordered the Department to provide notice to the Sioux tribes and this court dismissed the appeal as moot.  (*In re L.S.*, *supra*, B299673.)

On March 25, 2020, the Department sent ICWA notices to the Sioux tribes.

On September 28, 2020, the juvenile court terminated reunification services and set the matter for a section 366.26 hearing.

By July 2021, all but one tribe had responded, indicating that the children were not tribal members or eligible for membership, and that ICWA did not apply.

As to the remaining tribe, the Oglala Sioux, on July 1, 2021, a tribal representative orally reported that none of the family members was enrolled with the tribe but explained that the tribe, which was still in the process of responding to 2018 inquiries, would not be providing a written response.  The Department also re-sent the ICWA-030 notices to the Oglala Sioux, but did not receive a response.

On March 11, 2022, the juvenile court found that ICWA did not apply.

On March 11, 2022, the juvenile court held the section 366.26 hearing and terminated mother's parental rights.  Mother timely appealed.

# III. DISCUSSION

Mother's sole argument on appeal is that the Department did not comply with its duty of initial ICWA inquiry under section 224.2, subdivision (b). Specifically, mother contends that the Department did not adequately interview maternal grandmother, older child's paternal grandmother, the children's sibling L.K., and younger child's alleged paternal grandmother and relatives.

The Department's inquiry duties under ICWA are well established. Section 224.2 ""'creates three distinct duties regarding ICWA in dependency proceedings. First, from the [Department]'s initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the [Department] 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. [Citations.]" [Citation.]

"'At the first step, "[s]ection 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, such as the [Department], the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting

5

child abuse or neglect, whether the child is, or may be, an Indian child.'" [Citation.]' [Citation.]

"We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence. [Citation.]" (*In re H.V.* (2022) 75 Cal.App.5th 433, 437–438.)

We first consider mother's contention that the Department failed adequately to interview maternal grandmother about the children's Indian heritage. A social worker interviewed maternal grandmother on May 23, 2019, and obtained information that led to the Department's sending of detailed notices to the Cheyenne, Cherokee, and Sioux tribes, the Secretary of the Interior, and the Bureau of Indian Affairs. All tribes responded that the children were not Indian children and would not qualify for Indian tribal membership. To the extent mother contends that notwithstanding maternal grandmother's information about the children's possible Indian heritage, the Department was required to further ask about other available relatives and then presumably interview them, we conclude that the duty of inquiry does not require such a rote and exhaustive process particularly where, as here, maternal grandmother's information about possible Indian heritage resulted in the Department sending numerous notices to tribes, which included information about maternal grandmother, maternal grandfather, two maternal great-grandmothers, and two maternal great-grandfathers. (See *In re A.M.* (2020) 47 Cal.App.5th 303, 323 ["ICWA does not obligate the court or [the Department] 'to cast about' for investigative leads"].)

We also reject mother's next contention that a remand is appropriate because the Department did not interview the children's sibling, L.K. Mother does not explain how L.K. would

6

have any more knowledge about the children's Indian ancestry than mother or maternal grandmother or why the failure to interview L.K. rendered the Department's already meaningful and thorough inquiry deficient.

Similarly, we reject mother's contention that the Department, after learning from older child's paternal grandmother that she did not know of any other relatives who would have knowledge of Indian ancestry, should nonetheless have obtained contact information for other unnamed yet purportedly "available extended family members." (See *In re A.M., supra,* 47 Cal.App.5th at p. 323 ["There is no need for further inquiry if no one has offered information that would give the court or [the Department] reason to believe that a child might be an Indian child. This includes circumstances where parents 'fail[] to provide any information requiring followup' [citations] or if the persons who might have additional information are deceased [citation], or refuse to talk to [the Department]"].)

Finally, as to mother's contention that the Department was required to interview younger child's alleged paternal relatives, we disagree. Younger child's alleged father was not present throughout these proceedings. He did not acknowledge or establish paternity and, according to alleged paternal grandmother, younger child's alleged father had refused to accept younger child as his child. Under ICWA, "extended family member" is defined as the "child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2).) Here, the Department had no obligation to interview the alleged father's relatives as they were not "extended family members" within the meaning of ICWA. (See 25 U.S.C. § 1903(9) [excluding

7

from the definition of "parent" unwed fathers whose "paternity has not been acknowledged or established"]; § 224.1, subd. (c) [adopting federal definition of "parent"]; see also *In re Daniel M.* (2003) 110 Cal.App.4th 703, 708–709 [describing methods for unwed fathers to establish or acknowledge paternity].) Substantial evidence supports the juvenile court's finding that the Department complied with its duty of initial inquiry under ICWA.

## IV.  DISPOSITION

The order terminating parental rights is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

MOOR, J.